**CROWE & DUNLEVY, P.C.**
Mary H. Tolbert (admitted *pro hac vice*)
Braniff Building
324 N. Robinson Avenue, Suite 100
Oklahoma City, OK 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
Email: molly.tolbert@crowedunlevy.com

**LILLIS PITHA LLP**
Martin L. Pitha (Cal. State Bar No. 192447)
2603 Main Street, Suite 350
Irvine, CA 92614
Telephone: (949) 209-9020
Facsimile: (949) 759-1845
Email: mpitha@lp-lawyers.com

Attorneys for Defendant
APMEX, Inc.

[*Additional parties and counsel appear on signature page.*]

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A-WORLD TRADE, INC., | Case No. 2:20-cv-1032-SB-MAA |
| Plaintiff, | **DEFENDANTS' JOINT NOTICE OF MOTION AND JOINT MOTION TO DISMISS THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| APMEX, INC., *et al.* | *[Declaration of Mary H. Tolbert re Local Rule 7-3 attached]* |
| Defendants. | Date: January 15, 2021 |
| | Time: 8:30 a.m. |
| | Place: Courtroom 6C |
| | 350 W. 1st St., 6th Floor |
| | Los Angeles, CA 90012 |

TO A-WORLD TRADE, INC., AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on January 15, 2021, at 8:30 a.m., in Courtroom 6C of the above-entitled court, located at 350 W. 1st St., 6th Floor, Los Angeles, CA 90012, the Honorable Stanley Blumenfeld, Jr., presiding, Defendants APMEX, Inc., Bay Precious Metals, Inc., Bullion Exchange, LLC, Bullion Shark, LLC, DBS Coins LP, JM Bullion, Inc., Liberty Coin, LLC, Asset Marketing Services, LLC (f/k/a Moderncoinmart, LLC), Pinehurst Coin Exchange, Inc., Scottsdale Mind, LLLP, SD Bullion, Inc., Silver Gold Bull USA, Inc., SilverTowne, L.P., and Texas Gold & Silver Exchange, Ltd. (collectively "Defendants"), will move to dismiss the Third Amended Complaint, <u>Dkt. No. 182</u>, pursuant to Fed. R. Civ. P. 12(b)(6).

Defendants move to dismiss Count 1 and Count 2 pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to plead facts plausibly establishing its right to recover from Defendants on a cause of action for receipt of secret rebates under Cal. Bus. & Profs. Code § 17045. (Count 1 is brought against only the non-California Defendants and Count 2 is brought against only the California Defendants.)

Defendants move to dismiss Count 3 and Count 4 pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to plead facts plausibly establishing its right to recover from Defendants on a cause of action for below-cost pricing in violation of Cal. Bus. & Profs. Code § 17043. (Count 3 is brought against only the non-California Defendants and Count 4 is brought against only the California Defendants.)

Defendants move to dismiss Count 5 pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to plead facts plausibly establishing its right to recover from Defendants on a cause of action for conspiracy to restrain trade under Section 1 of the Sherman Act, 15 U.S.C. § 1.

This Motion will be based on this Notice, the attached Memorandum of Points and Authorities, the files and records in this action, argument of counsel, and upon such other and further matter adduced at the hearing or of which the court takes judicial notice.

1     The Motion is made following the conference of counsel pursuant to L.R. 7-3,

2  which took place by Zoom at 1:00 PT/3:00 CT on December 11, 2020. One full day prior

3  to this conference, counsel for Defendants had submitted to counsel for Plaintiff a joint

4  5-page letter detailing the issues to be raised in this Motion. *See* Exh. 1. Each of the

5  issues identified by Defendants was discussed at the conference, but the parties were

6  unable to resolve their differences.

7  Dated:  December 18, 2020        **CROWE & DUNLEVY, P.C.**
                    Mary H. Tolbert (admitted *pro hac vice*)

8

9                    **LILLIS PITHA LLP**
                    /s/ Martin L. Pitha

10                  Martin L. Pitha

11                  Attorneys for Defendant
                    APMEX, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT NOTICE OF MOTION AND JOINT MOTION TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................... 1

PROCEDURAL BACKGROUND.......................................................................... 3

ARGUMENTS AND AUTHORITIES ................................................................. 6

I.   THE TAC RELIES ON THE SAME ALLEGATIONS OF HORIZONTAL
     AGREEMENT PREVIOUSLY REJECTED BY THE COURT .............................. 7

     A.   Standard for alleging antitrust conspiracy............................................ 7

     B.   Plaintiff's allegations of indirect evidence of an agreement among
          Defendants were rejected in the Order ................................................. 8

II.  PLAINTIFF STILL FAILS TO ALLEGE BELOW-COSTS SALES ..................... 11

III. BECAUSE PLAINTIFF FAILS TO ALLEGE THAT DEFENDANTS
     HAVE MARKET POWER IN A FACIALLY PLAUSIBLE RELEVANT
     MARKET, IT CANNOT ALLEGE A REASONABLE PROSPECT OF
     RECOUPMENT.......................................................................................... 14

     A.   Plaintiff's proposed product market remains defective ..................... 15

     B.   Plaintiff fails to adequately allege that the relevant geographic market
          is limited to U.S. sales of Precious Metal Bullion ............................. 18

     C.   Plaintiff fails to allege that Defendants have market power ............. 19

IV.  PLAINTIFF FAILS TO PLEAD IT HAS ANTITRUST STANDING.................... 20

V.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UNFAIR
     PRACTICES ACT ...................................................................................... 23

     A.   Plaintiff fails to plead essential elements of a claim under § 17043 ................. 23

     B.   Plaintiff fails to plead essential elements of a claim under § 17045 ................. 23

CONCLUSION................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)................................................................. 6, 16, 19

*Atl. Richfield Co. v. USA Petroleum Co.,*
   495 U.S. 328 (1990)..................................................................... 11, 21

*Barker v. Riverside Cty. Office of Educ.,*
   584 F.3d 821 (9th Cir. 2009) ............................................................ 6

*Bathke v. Casey's Gen. Stores, Inc.,*
   64 F.3d 340 (8th Cir. 1995) .............................................................. 6

*Bay Guardian Co. v. New Times Media LLC,*
   114 Cal. Rptr. 3d 392 (2010) ........................................................... 23

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).......................................................... 6, 7, 8, 23, 24

*Bouldis v. U.S. Suzuki Motor Corp.,*
   711 F.2d 1319 (6th Cir. 1983) ........................................................... 5

*Brooke Grp., Ltd. v. Brown & Williamson Tobacco Corp.,*
   509 U.S. 209 (1993)................................................................. *passim*

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
   429 U.S. 477 (1977).................................................................... 20, 21

*Cargill, Inc. v. Monfort of Colo., Inc.,*
   479 U.S. 104 (1986)..................................................................... 7, 20

*Clean Water Opportunities, Inc. v. Willamette Valley Co.,*
   759 F. App'x 244 (5th Cir. 2019) ...................................................... 13

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.,*
   236 F.3d 1148 (9th Cir. 2001) ........................................................... 8

*Daniels-Hall v. Nat'l Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010). .......................................................... 6

*Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.,*
   833 F.3d 680 (6th Cir. 2016) ........................................................... 22

*Felder's Collision Parts, Inc. v. All State Advertising Agency, Inc.*,
   777 F.3d 756 (5th Cir. 2015) ..................................................................... 11

*Foman v. Davis*,
   371 U.S. 178 (1962)................................................................................... 25

*Frost v. LG Electronics, Inc.*,
   801 Fed. App'x 496 (9th Cir. 2020) ........................................................ 7, 8

*Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*,
   895 F.2d 1417 (9th Cir. 1990) ................................................................... 15

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ........................................................ 6, 15, 18

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ................................................................... 21

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ............................................................... 7, 25

*Kentmaster Mfg. Co. v. Jarvis Prod. Corp.*,
   146 F.3d 691 (9th Cir. 1998) ..................................................................... 11

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir.2008) ...................................................................... 25

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989) ..................................................................... 21

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................................... 6, 14

*Med Vets, Inc. v. VIP Petcare Holdings, Inc.*,
   811 Fed. App'x 422 (9th Cir. 2020) .......................................................... 20

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ..................................................................... 6

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984)..................................................................................... 7

*Morning Star Packing Co. v. SK Foods, L.P.*,
   No. 2:09-cv-00208-KJM-EFB, 2017 WL 2572459 (E.D. Cal. June 14,
   2017) ............................................................................................................ 7

ii

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ................................................................ 4, 8, 10

*Newcal Indus., Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) .................................................................. 14, 18

*Ojmar US, LLC v. Sec. People, Inc.*,
   No. 16-cv-04948-HSG, 2017 WL 5495912 (N.D. Cal. Nov. 16, 2017) ..................... 15

*Payment Logistics Ltd. v. Lighthouse Network, LLC*,
   No. 3:18-cv-00786-L-AGS, 2018 WL 5311907 (S.D. Cal. Oct. 24, 2018) .......... 19, 20

*Pool Water Prods. v. Olin Corp.*,
   258 F.3d 1024 (9th Cir. 2001) ............................................................................ 20

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3rd Cir.1997) ............................................................................... 17

*In re Read-Rite Corp.*,
   335 F.3d 843 (9th Cir. 2003) .............................................................................. 25

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ............................................................... 14, 19, 20, 21

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) .............................................................................. 22

*Shahinian v. Med. Staff of Los Robles Hosp. & Med. Ctr.*,
   No. 2:14-cv-09516-SVW-JPR, 2016 WL 9045473 (C.D. Cal. Feb. 2,
   2016) ............................................................................................................ 21, 22

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .............................................................................. 21

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
   547 F. Supp. 2d 1086 (C.D. Cal. 2007) ....................................................... 15, 17, 22

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
   875 F.2d 1369 (9th Cir. 1989) ............................................................................ 15

*Top Rank, Inc. v. Haymon*,
   No. CV 15-4961-JFW, 2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) ..................... 20

*United States v. Concentrated Phosphate Exp. Ass'n*,
   393 U.S. 199 (1968)............................................................................................ 11

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) .......................................................................... 11, 18, 25

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
  129 F. Supp. 3d 1012 (D. Or. 2015) ........................................................................... 14

*W. Pac. Kraft, Inc. v. Duro Bag Mfg. Co.*,
  794 F. Supp. 2d 1087 (C.D. Cal. 2011) ................................................................. 13, 24

*Westlake Servs., LLC v. Credit Acceptance Corp.*,
  No. CV 15-07490 SJO, 2015 WL 9948723 (C.D. Cal. Dec. 7, 2015) ................. 18, 19

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
  588 F.3d 659 (9th Cir. 2009) (per curiam) ................................................................... 7

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir.2009) ....................................................................................... 10

**Statutes**

15 U.S.C. § 1 ........................................................................................................... *passim*

15 U.S.C. § 13(a) ............................................................................................................. 3

15 U.S.C. § 15 ............................................................................................................... 20

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 14, 20

Fed. R. Civ. P. 15(a)(2) ................................................................................................ 25

Cal. Bus. & Profs. Code § 17043 ................................................................ 1, 3, 5, 23, 25

Cal. Bus. & Profs. Code § 17045 .............................................................................. *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Third Amended Complaint (the "TAC"), <u>Dkt. No. 182</u>, like the amendments preceding it, centers on Plaintiff's claim that Defendants are participants in a predatory pricing conspiracy with regard to the sale of precious metal bullion on eBay. TAC ¶ 1. Plaintiff alleges that eBay -- one of the largest online marketplaces in the world -- has agreed to act as the "hub" of Defendants' conspiracy, relaying communications among Defendants, and permitting them to reach an agreement as to the sequencing of their below-cost pricing. TAC ¶¶ 79-80, 116-120. Plaintiff contends further that eBay has agreed to pay Defendants "kickbacks" to finance their below-cost pricing and enable them to drive out competitors. TAC ¶ ¶ 145-147. Plaintiff contends that this purported conspiracy violates Section 1 of the Sherman Act, as well as Cal. Bus. & Profs. Code § 17043 and §17045.

On November 13, 2020, the Court issued a 21-page order dismissing Plaintiff's Second Amended Complaint and identifying in detail the fatal defects in that pleading. <u>Dkt. No. 181</u> (the "Order"). Although the Court gave Plaintiff the opportunity to amend its complaint to cure those defects, the TAC simply repackages the same factual allegations, changing the order and length of the paragraphs slightly to create a veneer of amendment where no substantive change exists. Most significantly:

- The Court held that Defendants' sequential discounting and temporary transfer of pricing control to eBay were ordinary incidents of participation in the eBay Daily Deals Program and not "plus factors" demonstrating concerted action. Therefore, the fact that Defendants separately contracted with eBay to participate in the Daily Deals Program was not enough to infer a conspiracy, even where Defendants were aware of other firms' participation in the Program. Order at 5-9. Despite this holding, Plaintiff attempts to plead conspiracy in the TAC with the very same allegations: Defendants' participation in the Daily Deals Program, TAC ¶¶ 104-110;

1

1    "anomalous pricing," TAC ¶¶ 99-103; the temporary forfeiting of price

2    control to eBay, TAC ¶¶ 104-110; and the knowledge that other firms were

3    participating in the Program, TAC ¶¶111-121.

4  • The Court held that, to allege that Defendants had sold bullion on eBay at

5    prices below an appropriate measure of their costs, Plaintiff must factor in

6    the subsidies received from eBay under the Daily Deals Program. Order at

7    11. Nevertheless, Plaintiff <u>excludes</u> the subsidies from its cost allegations,

8    contending that they "are *inter alia* unlawful." TAC ¶45.

9  • The Court held that, to allege a product market consisting of sales of gold

10   bullion on eBay, Plaintiff must explain why consumers would not switch to

11   other websites -- <u>or to other investments entirely</u> -- if Defendants were to

12   raise their prices above competitive levels. Order at 14-15. While Plaintiff

13   expands the product market marginally to include sales of other precious

14   metal bullion on eBay, Plaintiff still fails to explain why consumers would

15   not switch to other websites (or to any other place they could purchase

16   bullion) or to other investments if Defendants enacted a supracompetitive

17   price increase on eBay. TAC ¶¶ 24, 50.

18  • The Court held that, to allege a facially plausible geographic market,

19   Plaintiff must allege facts plausibly establishing that a consumer would not

20   patronize international sellers in the event of a price increase in the U.S.

21   Order at 16. Although Plaintiff alleges that shopping for bullion in the U.S.

22   is marginally less expensive and marginally more convenient for U.S.

23   consumers than international shopping, TAC ¶¶ 53-59, Plaintiff still fails to

24   explain why U.S. consumers would not purchase from international sellers

25   if prices for bullion rose to supracompetitive levels in the U.S.

26   As this reflects, the TAC is subject to dismissal for the same reasons set forth in

27   the Order: the TAC lacks factual allegations plausibly establishing a horizontal

28   conspiracy, below-cost pricing, and a reasonable prospect of recoupment. In addition,

2

Plaintiff has again failed to plead that it has antitrust standing, as it has failed to allege any harm to competition. Failure to plead these elements dooms Plaintiff's claim under Section 1 of the Sherman Act, as well as its claims under Cal. Bus. & Profs. Code § 17043 and § 17045. Accordingly, Defendants jointly move the Court to dismiss the TAC in its entirety. Since Plaintiff has now had three opportunities to amend and still cannot allege facts plausibly establishing its right to recover from Defendants on any cause of action, the Court should dismiss the TAC with prejudice.

## PROCEDURAL BACKGROUND

Plaintiff filed its initial Complaint against Defendants on January 31, 2020, alleging antitrust and business tort claims arising from Defendants' sales of 31 specific gold and silver products on eBay. Dkt. No. 1. Judge Olguin granted APMEX's motion to dismiss the Complaint, holding that it contained no allegation that Defendants sold any product below an appropriate measure of its cost. Dkt. No. 109. Plaintiff filed a First Amended Complaint (the "FAC") on June 22, 20, Dkt. No. 120, but sought leave to amend after conferring with Defendants as to their motions to dismiss. Dkt. No. 124.

Plaintiff filed a Second Amended Complaint (the "SAC") on July 20, 2020. Dkt. No. 126. The SAC purported to allege four causes of action: (1) a claim against APMEX for price discrimination under the Robinson-Patman Act, 15 U.S.C. § 13(a); (2) a claim against all Defendants for conspiracy to engage in predatory pricing under Section 1 of the Sherman Act, 15 U.S.C. § 1; (3) a claim against all Defendants for below-cost sales under Cal. Bus. & Profs. Code § 17043; and (4) a claim against all Defendants for secret rebates under Cal. Bus. & Profs. Code § 17045.

Each of the causes of action in the SAC was based on Defendants' alleged participation in the eBay Daily Deals Program. Under that Program, eBay invites sellers to list one or more specific items for sale on the eBay site at discounted prices for a specified period of time. SAC at Exh. 22 ¶ 1. Prior to the consummation of a Daily Deals Agreement, eBay commits to pay a specific subsidy for each item sold at the discounted price. *Id*. at ¶ 1 & Schedule 1. The eBay Daily Deals Program involves a multitude of

1   "items for sale at discounted prices," and is not limited to the sale of gold bullion or

2   other precious metals. *Id*. at 1.

3       On August 10, 2020, several Defendants filed motions to dismiss the SAC. *See*

4   Dkt. Nos. 135, 137, 138, 139, 140, 142, 144, & 146. Following full briefing and a

5   hearing, the Court granted APMEX's motion and dismissed the SAC without prejudice.

6   Dkt. No. 181. In its Order, the Court detailed the pleading deficiencies in the SAC.

7       First, the Court found that Plaintiff had failed to allege an agreement existed

8   among Defendants. In particular, the Court held that the Daily Deals Agreements

9   between each Defendant and eBay did not amount to direct evidence of a horizontal

10  agreement among Defendants, even if Defendants were aware that other firms were

11  participating in the Program. Order at 6. The Court further stated that, "to plead an

12  agreement through indirect evidence, Plaintiff must allege parallel conduct by

13  Defendants coupled with certain 'plus factors.'" Order at 5 (quoting *In re Musical*

14  *Instruments & Equip. Antitrust Litig*., 798 F.3d 1186, 1194 (9th Cir. 2015)). The Court

15  rejected Plaintiff's claim that "anomalous pricing behavior" (*i.e.*, sequential discounting)

16  or the temporary forfeiting of price control to eBay constituted "plus factors" indicative

17  of agreement among Defendants. Order at 7-9.

18      Second, the Court held that Plaintiff had failed to allege below-cost sales by

19  Defendants, an essential element of a predatory pricing claim. The Court found that, to

20  analyze whether Defendants made below-cost sales, it must evaluate Defendants' alleged

21  costs against the bullion's sale price and the subsidy from eBay. Order at 11. The SAC

22  failed to allege facts plausibly demonstrating that Defendants sold bullion on eBay at

23  below-cost prices because the eBay subsidy was not included in the analysis.

24      Third, the Court held that the SAC failed to allege a reasonable probability of

25  recoupment, which is "needed to state a predatory pricing claim," because its proposed

26  product and geographic markets were not facially plausible. Order at 13, 16. The Court

27  noted that Plaintiff's proposed product market, consisting of sales of Gold Bullion

28  Commodities on eBay alone, was "tightly gerrymandered." Order at 14. The Court

4

indicated that, regardless of whether factors existed that made eBay an attractive option for an investor in gold bullion, "merely identifying unique characteristics of an alleged product market is not enough to state a claim." *Id*. Instead, Plaintiff must put forth some allegation that consumers would be unwilling to patronize other websites in the face of a price increase on eBay. *Id*. at 14-15. The Court found that Plaintiff had alleged "nothing of the sort." *Id*. at 15. The Court held that the proposed geographic market (the United States) suffered from the same flaw: Plaintiff had alleged that "the U.S. eBay experience has some unique characteristics," but had not alleged facts indicating that a consumer would not patronize international sellers if U.S. sellers were to increase their prices to supracompetitive levels. *Id*. at 16.

Fourth, the Court held that Plaintiff had failed to allege actionable price discrimination against APMEX because the allegedly different prices charged by APMEX on eBay and its own website were "available equally and functionally to all customers." Order at 17 (quoting *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1326 (6th Cir. 1983)).

Finally, the Court held that Plaintiff had failed to state a claim under Cal. Bus. & Profs. Code § 17043 (below-cost sales) or § 17045 (secret rebates) because the SAC did not contain factual allegations plausibly establishing below-cost sales by any Defendant, which was the premise of Plaintiff's claim of competitive injury. Order at 18-19.

On December 4, 2020, Plaintiff filed the TAC. Dkt. No. 182. In the TAC, Plaintiff abandons its price discrimination claim against Defendant APMEX, Inc., but continues to pursue the remaining causes of action. Because, as shown below, Plaintiff has failed to cure any of the deficiencies identified in the Order as to its claims under Section 1 of the Sherman Act and Cal. Bus. & Profs. Code §§ 17043 and 17045, Defendants now file this joint motion to dismiss the TAC with prejudice in its entirety.

1

**ARGUMENT AND AUTHORITIES**

2      The Federal Rules require a plaintiff to plead "a short and plain statement of the

3   claim showing that [it] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion

4   to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

5   claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

6   (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible

7   "when the plaintiff pleads factual content that allows the court to draw the reasonable

8   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

9   In determining plausibility, a court accepts all facts in the complaint as true. *Barker v.*

10  *Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). The Court need not

11  accept as true, however, any legal conclusions put forth by the plaintiff. *Iqbal*, 556 U.S.

12  at 678. Dismissal is appropriate where the complaint lacks either a cognizable legal

13  theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela*

14  *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).[1]

15      "[T]he Supreme Court has urged great caution and a skeptical eye when dealing

16  with unfair pricing claims." *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 343 (8th

17  Cir. 1995). This is because "predatory pricing schemes are rarely tried, and even more

18  rarely successful," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

19  574, 588 (1986), and "the costs of an erroneous finding of liability are high." *Brooke*

20  *Grp., Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 226 (1993).

21          [T]he mechanism by which a firm engages in predatory pricing -- lowering

22          prices -- is the same mechanism by which a firm stimulates competition;

23          because "cutting prices in order to increase business often is the very essence

24

25

26  _____

[1] In deciding a motion to dismiss, a court may consider exhibits attached to the complaint

27  without treating the motion as one for summary judgment. *Hicks v. PGA Tour, Inc.*, 897
    F.3d 1109, 1117 (9th Cir. 2018) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,

28  998 (9th Cir. 2010)).

6

1   of competition . . .[;] mistaken inferences . . . are especially costly, because

2   they chill the very conduct the antitrust laws are designed to protect."

3   *Brooke Grp.*, 509 U.S. at 226 (alterations in the original) (quoting *Cargill, Inc. v.*

4   *Monfort of Colo., Inc.*, 479 U.S. 104, 122 n.17 (1986)). The Court thus noted that "[i]t

5   would be ironic indeed if the standards for predatory pricing liability were so low that

6   antitrust suits themselves became a tool for keeping prices high." *Id*. at 226-27.

7   **I.      THE TAC RELIES ON THE SAME ALLEGATIONS OF HORIZONTAL**

8          **AGREEMENT PREVIOUSLY REJECTED BY THE COURT.**

9          **A.     Standard for alleging antitrust conspiracy.**

10         A claim under Section 1 of the Sherman Act requires a "conscious commitment to

11  a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-*

12  *Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). Unilateral conduct or parallel conduct

13  (defendants individually deciding to take the same action) does not violate Section 1.

14  *Twombly*, 550 U.S. at 553-54. Therefore, Plaintiff must allege facts that "tend[] to

15  exclude the possibility of independent action." *Id*. at 554 (citations omitted). A complaint

16  alleging an antitrust conspiracy must be dismissed when the factual allegations are

17  consistent with unilateral and independent business decisions to engage in similar

18  conduct. *William O. Gilley Enters., Inc. v. Atl. Richfield Co*., 588 F.3d 659, 669 (9th Cir.

19  2009) (per curiam) (affirming dismissal of conspiracy claim); *Kendall v. Visa U.S.A.,*

20  *Inc*., 518 F.3d 1042, 1048 (9th Cir. 2008) (affirming dismissal of complaint where

21  plaintiffs "failed to plead any evidentiary facts beyond parallel conduct to prove their

22  allegations of a conspiracy").

23         Antitrust plaintiffs may meet their burden of pleading conspiracy by putting forth

24  direct evidence of an agreement among the defendants. *Frost v. LG Electronics, Inc.*, 801

25  Fed. App'x 496, 497 (9th Cir. 2020).[2] In the absence of direct evidence of an agreement,

26  ─────────────────────

27  [2] To meet the direct evidence standard, "the evidence must explicitly support the asserted
    proposition without requiring any inference." *Id*.; *see also Morning Star Packing Co. v.*

28  *SK Foods, L.P.*, No. 2:09-cv-00208-KJM-EFB, 2017 WL 2572459, at *8 (E.D. Cal. June

    *Footnote continues on next page.*

an antitrust plaintiff may meet its burden "by alleging parallel conduct among competitors and certain 'plus factors' suggesting a conspiracy." *Id.* at 497. Parallel conduct exists when "competitors adopt[] similar policies around the same time in response to similar market conditions." *In re Musical Instruments*, 798 F.3d at 1193. But since the same business decisions among competitors can be legitimate and "unilaterally prompted by common perceptions of the market," plaintiffs must allege "something more than merely parallel behavior." *Twombly*, 550 U.S. at 554. A plaintiff must allege "plus factors," which are "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *In re Musical Instruments*, 798 F.3d at 1194.

**B.      Plaintiff's allegations of indirect evidence of an agreement among Defendants were rejected in the Order.**

In the SAC, Plaintiff alleged that each Defendant's participation in the Daily Deals Program constituted parallel conduct, *see, e.g.,* SAC at ¶ 68, and that the "plus factors" were "anomalous pricing behavior" (*i.e.*, sequential discounting) and the temporary forfeiting of control over prices to eBay under the Daily Deals Agreement. SAC ¶¶ 71-72, 77-83. The Court held that alleging parallel conduct, alone, was insufficient, *see* Order at 7, and that these purported "plus factors" did not plausibly establish collusion among Defendants. First, the Court noted that the alleged spikes in sales were not "anomalous behavior," but rather the ordinary incident of each Defendant's lawful participation in the Daily Deals Program, under which eBay coordinated and sequenced sellers' discounts. Order at 8. Second, the Court found that the alleged temporary transfer of price control to eBay did not imply conspiracy because it was simply a term required by eBay for a seller to participate in the Daily Deals Program. *Id*. Because "a rational,

---

14, 2017) (quoting *Cnty. of Tuolumne v. Sonora Cmty. Hosp*., 236 F.3d 1148, 1155 (9th Cir. 2001)). Plaintiff does not allege any direct evidence of an agreement among Defendants. This Court has held that the Daily Deals Agreements, which are contracts between an individual seller and eBay, do not constitute direct evidence of a conspiracy among Defendants. Order at 6.

JOINT NOTICE OF MOTION AND JOINT MOTION TO DISMISS – MEMO. OF POINTS AND AUTHORITIES

profit-driven seller would 'give[] eBay a certain level of control over [its] discount level' if the seller 'has determined that the benefits of participation in the program outweigh[ed] its costs,'" this conduct was just as consistent with rational business behavior as with conspiracy. *Id*. at 8-9.

Despite this clear holding, the TAC relies on the <u>very</u> <u>same</u> indirect evidence of conspiracy rejected in the Order. The alleged parallel conduct identified by Plaintiff is the same sequential discounting identified in the SAC: "one Defendant at a time sells [Precious Metal Bullion] . . . at below-Cost prices while the other Defendants wait their turn to do the same." TAC ¶ 83. Plaintiff identifies the alleged plus factors as the following: (1) Defendants' execution of Daily Deals Agreements, TAC ¶¶ 93-98[3]; (2) Defendants' "anomalous pricing," under which only one Defendant sells bullion at a discount for a given time period, TAC ¶¶ 99-103; (3) Defendants' temporary "forfeiting [of] pricing control" to eBay in connection with each discount, TAC ¶¶ 104-110; and (4) Defendants' knowledge that other firms were participating in the Daily Deals Program, TAC ¶¶ 111-121.

Although the TAC now identifies "anomalous pricing" as <u>both</u> the parallel conduct <u>and</u> a "plus factor," and the TAC now refers to the execution of the Daily Deals Agreements as <u>only</u> a "plus factor" and <u>not</u> the parallel conduct, this re-sorting of Plaintiff's allegations cannot disguise the basic truth that these allegations were held in the Order to be insufficient to sustain a plausible inference of conspiracy among Defendants. There is no reason for the Court to reconsider its prior holding, particularly given the absence of any other allegations plausibly suggesting a horizontal agreement among Defendants.

Plaintiff's allegation that the Daily Deals Program is a plus factor fails because the

---

[3] The TAC refers to the Daily Deals Agreement as the "Commitment," *see* TAC ¶ 94, while the SAC referred to it as the "Confirmation," *see* SAC ¶ 62. Regardless of how it is labeled, it is neither direct nor indirect evidence of any conspiracy among Defendants.

decision for each Defendant to enter the program is not "largely inconsistent with unilateral conduct." Order at 7 (citing *In re Musical Instruments*, 798 F.3d at 1194); *see also* Order at 9 ("The mere fact that the Defendants separately contracted with eBay to participate in the Daily Deals Program is not enough to infer a conspiracy among them."). Nothing about the Daily Deals Program suggests that each Defendant did not or would not enter the program independently, or that it would be "perilous" for any individual Defendant to participate unless it had been assured that all Defendants would do so. *See In re Musical Instruments*, 798 F.3d at 1195. To the contrary, the allegations of the TAC make it clear that participation in the Daily Deals Program is advantageous for a seller <u>regardless of whether any other seller participates</u>. *See* TAC ¶¶ 83-89 (alleging that sellers greatly increased sales during discount period).[4]

As the foregoing demonstrates, the Court should once again conclude that Plaintiff has failed to allege a horizontal conspiracy among Defendants and dismiss Plaintiff's antitrust claim. *In re Musical Instruments*, 798 F.3d at 1198 (affirming dismissal of § 1 claim where plaintiffs "failed to allege enough nonconclusory facts to support the plausible inference that any agreement among the [defendants] was made"). Because the Court provided Plaintiff with specific guidance on the deficiencies of its allegations of horizontal conspiracy, and Plaintiff has not corrected those deficiencies, the Court should dismiss Plaintiff's antitrust claim with prejudice. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir.2009) (affirming dismissal with prejudice, stating that plaintiff's failure to correct deficiencies identified in prior dismissal is "'a strong

---

[4] Another fundamental failure is the absence of allegations offering any explanation for eBay's alleged participation in the conspiracy. The Daily Deals Agreement reflects that eBay wants prices on its platform to be <u>low</u> in order to generate sales. *See* TAC Exh. 22 at 2 (reciting that Daily Deals Program exists to "offer items for sale at discounted prices"). Nevertheless, Plaintiff alleges with no factual elaboration that eBay agreed to facilitate a conspiracy whose long-term goal was to <u>raise</u> prices above competitive levels. *See* TAC at ¶ 154 ("there is a reasonable prospect that the predatory pricing scheme . . . will cause a rise in prices above a competitive level"). eBay's participation in such a conspiracy, which would drive consumers away from the platform, is implausible.

1  indication that the plaintiffs have no additional facts to plead'") (quoting *In re Vantive*

2  *Corp. Sec. Litig.*, 283 F.3d 1079, 1098 (9th Cir. 2002)).

3  **II.    PLAINTIFF STILL FAILS TO ALLEGE BELOW-COST SALES.**

4      To state a claim for predatory pricing under the Sherman Act, a plaintiff must

5  show that the prices complained of are below an appropriate measure of the defendant's

6  costs. *Brooke Grp.*, 509 U.S. at 222-24. In considering the appropriate measure of

7  Defendants' costs in selling bullion on eBay, the Court observed that it was required to

8  "look at the economic reality of the relevant transactions." Order at 11 (quoting *United*

9  *States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 208 (1968)). That included

10  analysis of Defendants' "'means of offsetting and recouping' [their] low prices." Order

11  at 11 (quoting *Kentmaster Mfg. Co. v. Jarvis Prod. Corp.*, 146 F.3d 691, 694 (9th Cir.

12  1998)).

13      Applying these standards, the Court held that, in considering whether Defendants

14  had sold bullion at below-cost levels, "the subsidy revenue" from eBay "should be

15  considered in Defendants' cost calculation." Order at 12 (citing *Atl. Richfield Co. v. USA*

16  *Petroleum Co.*, 495 U.S. 328, 340 (1990)). The Court found that this conclusion was

17  confirmed by *Felder's Collision Parts, Inc. v. All State Advertising Agency, Inc.*, 777

18  F.3d 756 (5th Cir. 2015), in which the Fifth Circuit affirmed dismissal of predatory

19  pricing claims because the allegations of below-cost sales did not include a rebate

20  received by the defendant on each sale. *Id.* at 762-63. Because the rebates "undoubtedly

21  affect[ed]" the defendant's "bottom line," the Fifth Circuit held that the rebates "should

22  be considered in making th[e] determination" of whether the dealer was selling parts at

23  below-cost levels. *Id.* at 763-64.

24      In spite of this clear holding, Plaintiff explicitly excludes the eBay subsidy from

25  its allegations regarding Defendants' costs, stating that "the secret kickbacks received by

26  Defendants from eBay are ***not*** part of the cost of selling [Precious Metal Bullion] in the

27  eBay Bullion Market . . . ." TAC ¶ 45 (emphasis in the original). Just as in the SAC,

28  Plaintiff alleges that Defendants' costs of sale include <u>only</u> the purchase cost of bullion,

11

the eBay transaction fee, the shipping cost, the PayPal fee, and the seller's overhead. *Compare* TAC ¶¶ 30-44 *to* SAC ¶ 30. For this reason alone, Plaintiff's allegations are insufficient to support a plausible inference that Defendants sold bullion on eBay at below-cost prices, and its predatory pricing claim should be dismissed.

In refusing to consider the eBay subsidies in calculating Defendants' costs of sale, Plaintiff seizes on a single paragraph of the Order, in which the Court stated:

> Plaintiff also contends that the subsidy is an illegal "kickback" from eBay that should not be considered a legitimate part of Defendants' costs. . . . But Plaintiff has not plausibly alleged that the eBay Daily Deals Program is anything but a legitimate program involving a multitude of products beyond gold bullion and benefitting countless consumers. <u>Absent a plausible inference that the subsidy violates some specific law</u>, the subsidy revenue should be considered in Defendants' cost calculation.

Order at 12 (emphasis added). In reliance on that language, Plaintiff states, "for the reasons described in more detail below in paragraphs 133-142, 145-149, the secret kickbacks received by Defendants from eBay are ***not*** part of the cost of selling [Precious Metal Bullion] in the eBay Bullion Market because such secret kickbacks are *inter alia* unlawful." TAC ¶ 45 (emphasis in the original).

Paragraphs 133-142 and 145-149 shed little to no light on the supposed illegality of the eBay subsidies, however, relying primarily on conclusory allegations. For example, paragraph 133 alleges, "[t]he secret kickbacks that Defendants have secured for themselves are another barrier to entry. These secret kickbacks are unlawful." TAC ¶ 133. The subsequent paragraphs stress primarily that the kickbacks (1) have been kept secret from competitors and consumers, and (2) are not generally available. TAC ¶¶ 134-142. Paragraphs 145-149 contain nearly identical allegations. *See* TAC ¶¶ 145-149.

Although not explicitly stated, it appears that Plaintiff intends to allege that the subsidies are unlawful because they violate Cal. Bus. & Profs. Code § 17045, which prohibits the payment or receipt of secret rebates where such rebate has resulted in

12

"injury to a competitor" and has a "tendency" to "destroy competition." *W. Pac. Kraft, Inc. v. Duro Bag Mfg. Co.*, 794 F. Supp. 2d 1087, 1089-90 (C.D. Cal. 2011). As this Court held in the Order, however, in light of Plaintiff's theory of competitive injury, the subsidies allegedly received by Defendants could violate § 17045 <u>only</u> <u>if</u> Defendants made below-cost sales. Order at 19. And, as discussed above, Plaintiffs have not alleged that Defendants' sales are below-cost because it has not accounted for the subsidies. Thus, Plaintiff's claim that the subsidies are unlawful depends entirely on circular logic, *i.e.*, the subsidies should be excluded from Defendants' costs because they are unlawful, but they are only unlawful if they are excluded from Defendants' costs. This is a logical fallacy, not a legitimate legal argument.

The TAC contains no factual allegations giving rise to a plausible inference that the eBay subsidies in-and-of-themselves violate § 17045 or any other specific law.[5] Accordingly, the subsidies must be considered in determining whether Defendants sold bullion below cost. Order at 12. Because the TAC does not contain plausible allegations that Defendants priced their product below cost, Plaintiff's predatory pricing claim fails and should be dismissed. *See Clean Water Opportunities, Inc. v. Willamette Valley Co.*, 759 F. App'x 244, 247 (5th Cir. 2019) (affirming dismissal of predatory pricing claim where the allegations provided "no reasonable basis to infer" that defendant sold below cost).

### III.   BECAUSE PLAINTIFF FAILS TO ALLEGE THAT DEFENDANTS HAVE MARKET POWER IN A FACIALLY PLAUSIBLE RELEVANT MARKET, IT CANNOT ALLEGE A REASONABLE PROSPECT OF RECOUPMENT.

A predatory pricing claim also requires that the defendant had a reasonable

---

[5] The TAC vaguely asserts that "to the extent that [the kickbacks] allow eBay to demonstrate increased sales to impact share value . . . they would violate securities laws." TAC ¶ 141. This hypothetical -- unsupported by any statutory reference or other authority -- does not come close to establishing a "plausible inference that the subsidy violates some specific law. . . ." Order at 12.

prospect of recouping its investment in below-cost prices. *Brooke Grp.*, 509 U.S. at 224. Without recoupment, even if predatory pricing causes competitors painful losses, it produces lower aggregate prices in the market, and "consumer welfare is enhanced." *Id*. "In order to recoup their losses, [predatory firms] must obtain enough market power to set higher than competitive prices, and then must sustain those prices long enough to earn in excess profits what they earlier gave up in below-cost prices." *Matsushita*, 475 U.S. at 590-91.

   To sustain a plausible inference that Defendants have market power sufficient to charge supracompetitive prices, successful definition of the relevant market is "crucial" and the threshold step. Order at 13 (quoting *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995)). "The relevant market encompasses notions of geography as well as product use, quality, and description." *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1023 (D. Or. 2015); *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 n.4 (9th Cir. 2008) ("Antitrust law requires allegation of both a product market and a geographic market."). Although definition of the relevant market is a question of fact, a court may dismiss a complaint under Fed. R. Civ. P. 12(b)(6) when "the complaint's 'relevant market' definition is facially unsustainable." *Newcal Indus.*, 513 F.3d at 1045. "Such a 'facially unsustainable' relevant market may be found in cases where 'the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor.'" *Vesta Corp.*, 129 F. Supp. 3d at 1023.

### A.    Plaintiff's proposed product market remains defective.

   In the SAC, Plaintiff alleged that the relevant product market was sales of Gold Bullion Commodities on a single website: eBay. SAC at ¶ 41. Plaintiff alleged that the eBay market is "materially distinct" from all other outlets for gold bullion because it

14

offers certain features that make it particularly appealing to consumers, including seller and buyer rankings and no hidden fees. *See* SAC ¶¶ 48-57. The Court rejected Plaintiff's product market, however, describing it as "tightly gerrymandered" and "'contorted.'" Order at 14 (quoting *Hicks*, 897 F.3d at 1121). The Court stated that "merely identifying unique characteristics of an alleged product market is not enough to state a claim." Order at 14 (citing *Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*, 895 F.2d 1417, at *4 (9th Cir. 1990); *Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1095 (C.D. Cal. 2007); *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-cv-04948-HSG, 2017 WL 5495912, at *2 (N.D. Cal. Nov. 16, 2017)). To successfully allege a product market limited to sales on a single website, Plaintiff must "put forth some allegation that consumers would be 'unwilling to patronize' other websites in the face of a price increase." Order at 14-15 (quoting *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1377 (9th Cir. 1989)).

The Court cautioned that Plaintiff's predatory pricing theory appeared "particu-larly implausible" inasmuch as Plaintiff had alleged that Gold Bullion Commodities were fungible commodities acquired "primarily for the purpose of investment." Order at 15 (citing SAC ¶¶ 32, 45).

> Under these circumstances, one would expect a normal consumer seeking the highest return on her investment to be highly sensitive to changes in price. Plaintiff offers no plausible explanation for why consumers would not turn to other gold vendors or to other investment vehicles, like silver, in the face of a predatory price increase on eBay.

*Id*. At the hearing on the motion to dismiss, the Court repeated its observation that an investor could turn to other investments underlined entirely if the price of gold bullion on eBay increased, such as by purchasing stock in Amazon.

In drafting the TAC, the only portion of this guidance that Plaintiff appears to have heeded is the statement that an investor might consider silver as an alternative investment in the face of a price increase for gold. Plaintiff thus alleges that the relevant

product market is the sale of "Precious Metal Bullion" on eBay, and not simply "Gold Bullion Commodities." TAC ¶ 60. As the following demonstrates, however, this cures nothing as the factual allegations of the TAC still fail to sustain a plausible inference that the relevant market may be limited either to sales on eBay or to sales of bullion.

**Sales on eBay:** Plaintiff attempts to justify "gerrymandering" the product market to include sales of bullion <u>only</u> on eBay by listing various reasons that buyers should prefer shopping on eBay to shopping at bricks and mortar stores (TAC ¶ 65), other websites (¶ 66), or other "well-known third-party sites, like Amazon and Overstock" (TAC ¶ 67). Although these allegations may explain why consumers prefer to shop for bullion on eBay when the eBay price is the same as or lower than other retailers, they still do not explain why a purchaser of bullion on eBay would not turn to other vendors in the face of a supracompetitive price increase on eBay. The best Plaintiff can muster is the conclusory statement that, "[i]n the case of a price increase, customers in the eBay Bullion Market would be unwilling to patronize brick-and-mortar stores, individual seller sites, or other third-party platforms" TAC at ¶ 64; *see also* TAC ¶ 76. But the "formulaic recitation" of the elements of a cause of action "will not do." *Ashcroft*, 556 U.S. at 678. Moreover, the <u>factual</u> allegations of the TAC not only fail to support Plaintiff's conclusory assertion, they contradict it.

Plaintiff repeatedly asserts that consumers shop on eBay because it offers "highly competitive prices," allowing consumers to pay the lowest price possible for bullion. *See, e.g.*, TAC ¶ 65c (alleging that consumers prefer eBay to bricks and mortar stores because "online dealers can typically offer more competitive prices than their local coin shop establishments"); TAC ¶ 66e (alleging that consumers prefer eBay to other websites because they can accumulate "eBay Bucks" which can be redeemed to reduce the price of bullion); TAC 66f (alleging that consumers benefit from price competition among multiple sellers); TAC ¶ 72 (alleging that, "[a]s an added benefit to both buyers and sellers in the eBay Bullion Market, eBay states that it has a 'wide selection of bullion at highly competitive prices, and there aren't any hidden fees to watch out for'"). Put

1    otherwise, Plaintiff alleges that eBay bullion customers are price-sensitive.

2         Further, Plaintiff alleges that consumers purchase bullion "primarily for the

3    purpose of investment." TAC ¶ 61. As the Court noted in the Order, "one would expect a

4    normal consumer seeking the highest return on her investment to be highly sensitive to

5    changes in price." Order at 15.

6         Plaintiff's factual allegations indicating that consumers purchase bullion on eBay

7    because eBay offers low prices preclude any inference that these customers would not

8    switch to other websites in the face of a supracompetitive price increase on eBay.

9    Accordingly, Plaintiff's proposed product market -- limited to sales of bullion on eBay --

10   is facially unsustainable. *See also Streamcast Networks*, 547 F. Supp.2d at 1095

11   (rejecting proposed product market where, while "many users may personally prefer"

12   one network operator's services, "there is simply no indication that users are unwilling to

13   'patronize' other networks and/or that they would not switch . . . to another provider or

14   network" in the face of a price increase).

15        **Sales of Precious Metal Bullion:** Plaintiff also fails to justify limiting the relevant

16   product market to sales of "Precious Metal Bullion." The relevant product market must

17   encompass "all interchangeable substitute products." *Queen City Pizza, Inc. v. Domino's*

18   *Pizza, Inc*., 124 F.3d 430, 436 (3rd Cir.1997). Where Plaintiff alleges that consumers

19   purchase bullion "primarily for the purpose of investment," TAC ¶ 61, the product

20   market must encompass alternate investment vehicles to which consumers could turn in

21   the event of a price increase for bullion. In order to limit the product market to bullion,

22   Plaintiff must provide factual allegations that explain why consumers would not turn to

23   other investment vehicles, like stock in Amazon or Apple, in the face of a predatory price

24   increase in bullion. *See* Order at 15. Plaintiff fails to do so.

25        Under such circumstances the product market proposed by Plaintiff is facially

26   unsustainable and its antitrust claim must be dismissed. *Hicks*, 897 F.3d at 1123; *Newcal*

27   *Indus*., 513 F.3d at 1045. Plaintiff has now unsuccessfully alleged four different product

28   markets in this case: (1) the sale of thirty-one specific gold coins and bars on eBay,

17

Compl. ¶ 21; (2) the sale of gold coins and gold bars on eBay, FAC ¶ 23; (3) the sale of Gold Bullion Commodities on eBay, SAC ¶ 41; and now (4) the sale of Precious Metal Bullion on eBay. TAC ¶ 60. There is no reason for Plaintiff to be given a fifth try. *Vantive*, 283 F.3d at 1097 (where plaintiffs "had three opportunities to plead their best possible case," it was "not unreasonable for the district court to conclude that it would be pointless to give the plaintiffs yet another change to amend").

**B.     Plaintiff fails to adequately allege that the relevant geographic market is limited to U.S. sales of Precious Metal Bullion.**

In the SAC, Plaintiff alleged without <u>any</u> factual enhancement that the relevant geographic market was the United States. In its opposition to APMEX's motion to dismiss, Plaintiff argued generally that international shipping was more expensive and that international buyers received fewer protections and a different return policy. The Court found such claims insufficient to justify limiting the geographic market to the United States, stating that "merely noting that the U.S. eBay experience has some unique characteristics is not equivalent to alleging that a consumer would not patronize international sellers in the event of a price increase." Order at 16 (citing *Westlake Servs., LLC v. Credit Acceptance Corp.*, No. CV 15-07490 SJO (MRWx), 2015 WL 9948723, at *5 (C.D. Cal. Dec. 7, 2015)).

In spite of the Court's directive, Plaintiff again relies on a recitation of the reasons that consumers likely prefer to purchase bullion from U.S. sellers, including (again) allegations that international shipping is more expensive[6] and adding allegations that customs forms are burdensome. TAC ¶¶ 53-59. These allegations miss the mark. It is unremarkable that a rational consumer purchasing bullion for investment purposes would

---

[6] It is noteworthy that the difference in shipping charges highlighted by Plaintiff is **<u>$3.34</u>** for a consumer purchasing from a seller in Canada rather than a seller in Michigan. TAC ¶ 56. While Plaintiff refers to this somewhat dramatically as "80% more than the domestic shipment of the same coin," it is not plausible that $3.34 would prevent a rational investor from switching to Canadian sellers if Defendants raised the price of bullion by more than that amount.

consider the total cost of the transaction in determining whether to purchase from a U.S. seller or an international seller. And it is certainly plausible that, where the price of the bullion (a commodity traded on markets all around the world, *see* TAC, Exh. 5 at 2) is the same or lower in the U.S. than in other countries, a U.S. consumer will find it less expensive overall (and more convenient) to purchase from U.S. sellers. But that is not the test.

As this Court cautioned, Plaintiff must provide factual allegations giving rise to a plausible inference that a U.S. consumer would not switch to a foreign seller in the face of a supracompetitive price increase in the U.S. Order at 16. The TAC contains no such allegations. Rather, Plaintiff simply recites that "United States consumers in the eBay Bullion Market would not patronize international sellers in the event of a price increase of [bullion] in the eBay Bullion Market . . . ." TAC ¶ 52. This "naked assertion" devoid of "further factual enhancement" will not do. *Iqbal*, 556 U.S. at 678. Because the allegations of the TAC fails to sustain a plausible inference that the geographic market for bullion is limited to the United States, the motion to dismiss should be granted. *Westlake Servs.*, 2015 WL 9948723, at *5 (granting motion to dismiss for failure to allege relevant geographic market).

### C. Plaintiff fails to allege that Defendants have market power.

"Without a definition of the relevant market, it is impossible to determine market share." *Rebel Oil*, 51 F.3d at 1434; *see also Payment Logistics Ltd. v. Lighthouse Network, LLC*, No. 3:18-cv-00786-L-AGS, 2018 WL 5311907, at *4 (S.D. Cal. Oct. 24, 2018). Plaintiff attempts to overcome this failing by alleging that, based solely on "its own estimations," Defendants have 95% market share. TAC at ¶ 128 n.12. Plaintiff concedes, however, that it has no factual basis for that estimate. *Id.*[7] Nor does Plaintiff

---

[7] Although Plaintiff has now offered several different definitions of the relevant product market, Plaintiff has alleged that Defendants have 95% market share in each variation. *See, e.g.*, TAC ¶ 128; SAC ¶ 90; FAC ¶ 75). This further demonstrates Plaintiff has no plausible basis for its allegations and is instead plucking the 95% figure out of thin air.

provide any factual allegations to explain how it came by that figure. *Top Rank, Inc. v. Haymon*, No. CV 15-4961-JFW (MRWx), 2015 WL 9948936, at *8 (C.D. Cal. Oct. 16, 2015) (although Plaintiff may not have to allege "an exact, percentage-based market share," it "must include enough facts to raise its right to relief above the speculative level"). Where Plaintiff alleges that there are approximately 200 competing sellers of GBCs on eBay alone, TAC at ¶ 126, Plaintiff's claim of market power is speculative and insufficient to demonstrate any possibility of recoupment. *See Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, 811 Fed. App'x 422, 423-24 (9th Cir. 2020) (affirming dismissal where plaintiff failed to allege "any facts" pertaining to defendants' share of the relevant market and remaining allegations were "either too conclusory or speculative to support a plausible claim" of market power).

## IV.  PLAINTIFF FAILS TO PLEAD IT HAS ANTITRUST STANDING.

On its fourth attempt, Plaintiff still fails to meet the threshold requirement to bring this case: antitrust standing. To adequately plead antitrust standing, Plaintiff must allege it has suffered "antitrust injury," an "element of all antitrust suits." *Rebel Oil*, 51 F.3d at 1433. An antitrust plaintiff must allege an antitrust injury to survive a Rule 12(b)(6) challenge. *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001).[8] Antitrust injury "mean[s] an 'injury of the type the antitrust laws were intended to prevent' -- *i.e.*, an injury to competition." *Somers v. Apple, Inc.*, 729 F.3d 953, 967 (9th Cir. 2013) (quoting *Brunswick Corp.*, 429 U.S. at 489).

Because Plaintiff has failed to identify a legally sufficient relevant market, *see supra* at pp. 15-18, Plaintiff cannot as a matter of law sufficiently allege an effect on

---

[8] The requirement that a plaintiff allege antitrust injury derives from the general antitrust damages right of action in § 4 of the Clayton Act, 15 U.S.C. § 15 ("any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor"). *See Cargill*, 479 U.S. at 109-10. This requirement ensures that private plaintiffs bring claims only for damages "of the type the antitrust laws were intended to prevent and that flow[] from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

1  competition, and cannot allege antitrust injury. *Image Tech. Servs., Inc. v. Eastman*

2  *Kodak Co*., 125 F.3d 1195, 1203 (9th Cir. 1997) ("Without a proper definition of the

3  relevant market, it is impossible to determine a party's influence over the market."); *see*

4  *also Shahinian v. Med. Staff of Los Robles Hosp. & Med. Ctr.*, No. 2:14-cv-09516-SVW-

5  JPR, 2016 WL 9045473, at *6 (C.D. Cal. Feb. 2, 2016) (dismissing antitrust claim and

6  noting that, to show antitrust injury, "typically a plaintiff must offer 'proof of the

7  relevant geographic and product markets and demonstration of the restraint's

8  anticompetitive effects within those markets'") (quoting *Les Shockley Racing, Inc. v.*

9  *Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989)).

10     Similarly, because Plaintiff has failed to allege that Defendants have sold bullion

11  below an appropriate measure of their costs, *supra*, at pp. 11-13, it cannot plead antitrust

12  injury. *See Brooke Grp.*, 509 U.S. at 223 ("[W]e have rejected elsewhere the notion that

13  above-cost prices that are below general market levels . . . inflict injury to competition

14  cognizable under the antitrust laws."). The Supreme Court has been strict about the

15  requirement to plead below-cost prices, because, at base, "[l]ow prices benefit consumers

16  regardless of how those prices are set, and so long as they are above predatory levels,

17  they do not threaten competition." *Id*. (quoting *Atl. Richfield*, 495 U.S. at 340).

18     Further, Plaintiff's attempt to establish competitive injury by alleging (without

19  support) that Defendants' below-cost pricing has "foreclose[d] competition" also fails.

20  *See* TAC at ¶¶ 3, 122, 132, 215-16. The exclusion of a competitor or competitors from

21  the market is not, standing alone, antitrust injury, as the Ninth Circuit has repeatedly

22  emphasized. *Rebel Oil*, 51 F.3d at 1433 ("[The] reduction of competition does not invoke

23  the Sherman Act until it harms consumer welfare."); *id*. ("Though rivals may suffer

24  financial losses or be eliminated as a result of the below-cost pricing, injury to rivals at

25  this stage of the predatory scheme is of no concern to the antitrust laws."); *Rutman Wine*

26  *Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987) ("Competition means that

27  some may be forced out of business. The antitrust laws are not designed to guarantee

28  every competitor tenure in the marketplace."). Rather, Plaintiff must allege facts

plausibly establishing that the exclusion of competitors has led or will reasonably lead to some rise in prices, decrease in output, and reduction in quality. *Brooke Grp.*, 509 U.S. at 225; *Streamcast Networks*, 547 F. Supp. 2d at 1097; *Shahinian*, 2016 WL 9045473, at *6. It fails to do so. Indeed, despite alleging that Defendants have already achieved "near-complete foreclosure" of all competitors and control 95% of the market, Plaintiff does not allege a single price increase has occurred. Plaintiff simply states in passing that there is a "reasonable prospect" that the scheme will cause a rise in prices, and that Defendants may "impose supracompetitive pricing" "when they decide to do so." TAC ¶¶ 153-154. This unsupported speculation fails to meet established pleading standards.

The TAC makes clear that the only competitive injury claimed by Plaintiff is that it has lost sales from Defendants' alleged below-cost pricing. *See. e.g.*, TAC ¶ 3 (alleging that, through their alleged predatory pricing, Defendants have "secured for themselves an unfair advantage and benefit, to the detriment of competition and competitors like Plaintiff"). But below-cost pricing without recoupment (*i.e.*, "unsuccessful predation") is a "boon" to consumers and does not give rise to antitrust injury. *Brooke Grp.*, 509 U.S. at 224. *See also Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, 833 F.3d 680, 690 (6th Cir. 2016) (stating that, what pricing a form of predation is "not the downswing in prices but the gouging upswing in prices after the competition has been eliminated or disciplined"). As previously shown, Plaintiff fails to allege facts plausibly establishing any chance of recoupment here. *See supra* at pp. 14-20. Accordingly, Plaintiff fails to allege antitrust injury and its Sherman Act claim must be dismissed.

## V.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UNFAIR PRACTICES ACT.

Plaintiff purports to state claims against Defendants for violation of Cal. Bus. & Profs. Code §§ 17043 and 17045. As shown below, the pleading failures described above also doom Plaintiff's state law claims.

**A.      Plaintiff fails to plead essential elements of a claim under § 17043.**

Plaintiff asserts identical claims against all Defendants under § 17043 in Counts 3 and 4 of the TAC.[9] Section 17043 prohibits "sell[ing] any article or product at less than the cost thereof to [a] vendor . . . for the purpose of injuring competitors or destroying competition." *Bay Guardian Co. v. New Times Media LLC*, 114 Cal. Rptr. 3d 392, 403 (2010). To prove a claim under § 17043, "a plaintiff must allege and prove two elements: (1) below-cost sales undertaken for the purpose of injuring competitors or destroying competition that (2) have resulted in a competitive injury." *Id.*

As discussed *supra* at pp.  11-13, Plaintiff has not plausibly alleged below-cost sales. Nor has it plausibly alleged competitive injury. *Supra* at pp. 20-22. Plaintiff has therefore failed to state a claim under § 17043. Additionally, Plaintiff fails to provide any factual allegations suggesting that Defendants acted with the purpose of destroying competition, rather than simply increasing its sales on eBay. Instead, Plaintiff simply recites the crucial elements of its claim: "Defendants' purpose in selling [bullion] below their Cost, during the Time Period, was to consolidate market power and foreclose competition in the eBay Bullion Market." TAC ¶¶ 188, 204. Under *Twombly*, such conclusory allegations are not entitled to a presumption of truth and are insufficient to state a claim under § 17043. *Twombly*, 550 U. S., at 554–555.

**B.      Plaintiff fails to plead essential elements of a claim under § 17045.**

Plaintiff asserts identical claims against all Defendants under § 17045 in Counts 1 and 2 of the TAC. Section 17045 provides that "[t]he secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise . . . to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful." "To show a violation [of § 17045], a plaintiff must prove [1] a secret allowance of an unearned discount, [2] injury to a competitor, and [3] a

---

[9] In an apparent effort to manufacture diversity jurisdiction in the event its Sherman Act claim is dismissed, Plaintiff brings its state-law claims in separate counts against the California Defendants and the non-California Defendants.

1    tendency that the allowance will destroy competition." *W. Pac. Kraft, Inc. v. Duro Bag*

2    *Mfg. Co.*, 794 F. Supp. 2d 1087, 1089-90 (C.D. Cal. 2011).

3            In the TAC, Plaintiff alleges that each Defendant "received secret payments" from

4    eBay in the form of subsidies under the Daily Deals Program. TAC ¶¶ 158, 172.

5    However, Plaintiff's allegations of injury to a competitor and tendency to destroy

6    competition rest on the premise that Defendants made below-cost sales of Precious Metal

7    Bullion on eBay. *See* TAC ¶¶ 162, 176 (alleging that the eBay subsidies "allowed

8    Defendants to continue and prolong their below-Cost pricing . . . and to eliminate

9    competition in the eBay Bullion Market" and "to injure their competitors in such

10   markets"). As discussed *supra* at pp. 11-13, Plaintiff has not plausibly alleged below-

11   cost sales. Nor has it plausibly alleged competitive injury. *Supra* at pp. 20-22. Plaintiff

12   has therefore failed to state a claim under § 17045.

13           Additionally, as to all Defendants other than APMEX,[10] the TAC contains

14   insufficient factual allegations to plausibly establish that any Defendant made a sale into

15   California for which it was paid a rebate or subsidy by eBay. The TAC recites generally

16   that "[o]ne or more of each Defendant's sales of [bullion] for which Defendant received

17   and accepted a 'kickback' . . . involved a sale in California." TAC ¶ 160. This allegation

18   is conclusory, however, and not entitled to a presumption of truth. *Twombly*, 550 U.S. at

19   554–555. Plaintiff must plead "not just ultimate facts" but "evidentiary facts." *Kendall*,

20   518 F.3d at 1047. Plaintiff fails to meet this burden.

                              **CONCLUSION**

22           As the foregoing demonstrates, Plaintiff's allegations are insufficient to establish

23   essential elements of its claims under Section 1 of the Sherman Act, and §§ 17043 and

24

25   [10] Plaintiff attaches to the TAC Exhibits 27 and 28, which are receipts for the purchase of
     PMBs from APMEX by a California purchaser (Plaintiff) for which APMEX allegedly

26   received a subsidy from eBay. TAC at Exhs. 27 & 28 [Dkt. Nos. 182-27 & 182-28].
     Although Plaintiff attaches a receipt for a purchase of PMBs from Defendant Bullion

27   Exchanges, LLC, that was shipped to California, *see* TAC at Exh. 52 [Dkt. No. 182-52],

28   there is no allegation that Bullion Exchanges received a subsidy from eBay for this sale.

17045 of the California Business & Professions Code. At most, Plaintiff has alleged that Defendants are participants in an eBay marketing program under which eBay provides subsidies of its choosing to sellers of its choosing, and thereby permits those sellers to offer discounts to consumers. Such a program is not only lawful, it is a "boon" to consumers. *Brooke Grp.* 509 U.S. at 224.

Although Fed. R. Civ. P. 15(a)(2) instructs district courts to "freely give leave [to amend] when justice so requires," the Ninth Circuit has held that a district court may in its discretion deny leave to amend due to, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir.2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Indeed, where a plaintiff has previously been granted leave to amend and has failed to add the requisite particularity to its claims, "[t]he district court's discretion to deny leave to amend is particularly broad." *In re Read-Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003) (quoting *Vantive*, 283 F.3d at 1097-98). Plaintiff has now had three opportunities to amend and still is unable plead essential elements of its claims against Defendants. Accordingly, Defendants respectfully request that the Court enter an order dismissing the TAC with prejudice.

/ / /

/ / /

/ / /

Dated:  December 18, 2020          Respectfully Submitted,

                                   */s/Martin L. Pitha*
                                   MARY H. TOLBERT
                                   **CROWE & DUNLEVY, P.C.**
                                   Braniff Building
                                   324 N. Robinson Avenue, Suite 100
                                   Oklahoma City, OK 73102
                                   Telephone: (405) 235-7700
                                   Facsimile: (405) 272-5914
                                   molly.tolbert@crowedunlevy.com

                                   Martin L. Pitha
                                   **LILLIS PITHA LLP**
                                   2603 Main Street, Suite 350
                                   Irvine, CA 92614
                                   Telephone: (949) 209-9020
                                   Facsimile: (949) 759-1845
                                   mpitha@lp-lawyers.com
                                   *Attorneys for Defendant Apmex, Inc.*

                                   */s/Harris K. Weiner\**
                                   HARRIS K. WEINER
                                   **SALTER, MCGOWAN, SYLVIA &
                                   LEONARD, INC.**
                                   56 Exchange Terrace, Suite 500
                                   Providence, Rhode Island 02903
                                   Telephone: (401) 274-0300
                                   Facsimile: (401) 453-0073
                                   hweiner@smsllaw.com

                                   Ryan D. Lapidus
                                   Jim D. Bauch
                                   **LAPIDUS & LAPIDUS
                                   A PROFESSIONAL LAW CORPORATION**
                                   177 South Beverly Drive
                                   Beverly Hills, California 90212
                                   Telephone: (310) 550-8700
                                   Facsimile: (310) 943-2471
                                   *Attorneys for Defendant Bay Precious Metals, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*/s/Gina E. Och\**
EDMUND GERARD FARRELL, III
GINA E. OCH
EVAN B. DELGADO
**MURCHISON & CUMMING, LLP**
801 S. Grand Ave., 9th Fl.
Los Angeles, CA  90017
Telephone: (213) 630-1081
Facsimile: (213) 623-6336
efarrell@murchinsonlaw.com
goch@murchinsonlaw.com
edelgado@murchisonlaw.com
*Attorneys for Defendant Bullion Exchange, LLC*

*/s/Lawrence C. Locker\**
LAWRENCE C. LOCKER
**SUMMIT LAW GROUP, PLLC**
315 Fifth Avenue S., Suite 1000
Seattle, WA 98104-2682
Telephone: (206) 676-7000
larryl@summitlaw.com
*Attorneys for Defendants Pinehurst Coin*
*Exchange, Inc., Bullion Shark, LLC, and Silver*
*Towne L.P.*

*/s/Amy A. Mousavi\**
AMY A. MOUSAVI
**MOUSAVI & LEE, LLP**
19200 Von Karman Ave., Suite 940
Irvine, California 92612
Telephone: (949) 864-9667
amousavi@mousavilee.com
*Attorneys for Defendant DBS Coins, LP*

JOINT NOTICE OF MOTION AND JOINT MOTION TO DISMISS – MEMO. OF POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/Daniel D. Heidtke\**

DOMINICA C. ANDERSON

TRACY ANN GALLEGOS

**DUANE MORRIS, LLP**

Spear Tower

One Market Plaza, Suite 2200

San Francisco, California 94105-1127

Telephone: (415) 957-3000

Facsimile: (415) 957-3001

dcanderson@duanemorris.com

tagallegos@duanemorris.com

DANIEL B. HEIDTKE

**DUANE MORRIS, LLP**

865 South Figueroa Street, Suite 3100

Los Angeles, CA  90017

Telephone: (213) 689-7421

Facsimile: (213) 847-7783

dbheidtke@duanemorris.com

*Attorneys for Defendant JM Bullion, Inc.*

*/s/Deepti Bansal\**

DEEPTI BANSAL

**COOLEY, LLP**

1299 Pennsylvania Avenue, NW,

Suite 700

Washington, DC  20004-2400

Telephone: (202) 728-7027

Facsimile: (202) 842-7899

dbansal@cooley.com

MARCUS D. PETERSON

**COOLEY, LLP**

1333 2nd Street, Suite 400

Santa Monica, California 9041

Telephone: (310) 883-6400

Facsimile: (310) 883-6500

mpeterson@colley.com

*Attorneys for Defendant Liberty Coin, LLC*

JOINT NOTICE OF MOTION AND JOINT MOTION TO DISMISS – MEMO. OF POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/Mack H. Reed\**
EVAN C. BORGES
**GREENBERG GROSS LLP**
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801
eborges@ggtriallaw.com
asechooler@ggtriallaw.com

CHRISTOPHER W. MADEL
MACK H. REED
ELLEN M. AHRENS
STEPHEN PREMO
**MADEL PA**
800 Pence Building
800 Hennepin Avenue
Minneapolis, MN  55403
Telephone: (612) 605-0630
Facsimile: (612) 326-9990
cmadel@madellaw.com
mreed@madellaw.com
eahrens@madellaw.com
*Attorneys for Defendant Asset Marketing*
*Services, LLC, as successor-in-interest to*
*ModernCoinMart, LLC*

*/s/Colin P. Ahler\**

KEITH M. GREGORY

**SNELL & WILMER L.L.P.**

350 South Grand Avenue, Suite 3100

Los Angeles, California 90071

Telephone: (213) 929-2500

Facsimile: (213) 929-2525

kgregory@swlaw.com

COLIN P. AHLER

**SNELL & WILMER L.L.P.**

400 E. Van Buren Street, Suite 1900

Phoenix, Arizona 85004

Telephone: (602) 382-6000

Facsimile: (602) 382-6070

cahler@swlaw.com

*Attorneys for Defendant Scottsdale Mint, L.L.L.P.*

*/s/Lara R. Shapiro\**

BRADLEY R. TYER

LARA R. SHAPIRO

**BRADLEY R. TYER & ASSOCIATES**

27240 Turnberry Ln., Ste. 200

Valencia, California 91355

Telephone: (661) 295-1600

Facsimile: (661) 295-1552

bradley@brtlaw.com

shapiro.lara@gmail.com

*Attorneys for Defendant SD Bullion, Inc.*

*/s/Mark Riera\**

MARK RIERA

**JEFFER MANGELS BUTLER & MITCHELL LLP**

1900 Avenue of the Stars, 7th Floor

Los Angeles, California 90067-4308

Telephone: (310) 203-8080

Facsimile: (310) 203-0567

mriera@jmbm.com

*Attorneys for Defendant Silver Gold Bull USA, Inc.*

JOINT NOTICE OF MOTION AND JOINT MOTION TO DISMISS – MEMO. OF POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/Larry Hecimovich\**
JONATHAN R. GROSS
LARRY HECIMOVICH
**MOUND COTTON WOLLAN &
GREENGRASS LLP**
2200 Powell Street Suite 1050
Emeryville, California 94608
Telephone: (510) 900-9371
Facsimile: (510) 900-9381
jgross@moundcotton.com
lhecimovich@moundcotton.com
*Attorneys for Defendant Texas Gold and Silver
Exchange, Ltd.*

* Pursuant to Local Rule 5-4.3.4(2), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.