JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:20-cv-01032-SB-MAA | Date: | 2/22/2021 |
|---|---|---|---|

| Title: | *A World Trade, Inc. v. Apmex, Inc. et al* |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **ORDER GRANTING IN PART MOTION TO DISMISS (DKT. NO. 185), AND DECLINING SUPPLEMENTAL JURISDICTION OVER STATE-LAW CLAIMS**

This case arises from an alleged predatory pricing scheme involving precious metal bullion sold on the website, eBay.com. All parties are in the business of selling that commodity, including Plaintiff A World Trade, Inc. and Defendants Apmex, Inc., Bay Precious Metals, Inc., Bullion Exchange, LLC, Bullion Shark, LLC, DBS Coins, LP, JM Bullion, Inc., Liberty Coin, LLC, Moderncoinmart, LLC, Pinehurst Coin Exchange, Inc., Scottsdale Mint, LLLP, SD Bullion, Inc., Silver Towne, Inc., Texas Gold and Silver Exchange, Ltd., and Silver Gold Bull USA, Inc. Dkt. No. 182 (Third Amended Complaint, hereafter TAC).

Plaintiff has amended its complaint a number of times. Judge Olguin dismissed the original complaint. Dkt. No. 109. Plaintiff filed a First Amended Complaint, which was subsequently amended by stipulation. Dkt. Nos. 120, 124. Plaintiffs then filed a second amended complaint (SAC), which this Court dismissed with leave to amend on November 13, 2020. Dkt. No. 181 (Prior Order). Plaintiff next filed the TAC, alleging a federal antitrust claim and state unfair

competition claims. Dkt. No. 182. Before the Court is a joint motion to dismiss filed by all Defendants, Dkt. No. 185 (MTD), which has been fully briefed, Dkt. Nos. 189 (Opp.), 190 (Reply). The factual and procedural history were set forth in the Prior Order and will not be repeated here in full. *See* Dkt. No. 181.  For the reasons explained below, Plaintiff still fails to state a plausible federal antitrust claim, and the claim will be dismissed with prejudice.

## I.      THE SHERMAN ACT CLAIM

Plaintiff once again alleges a federal antitrust claim under Sherman Act § 1. TAC ¶¶ 212-217. Section 1 provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. "To establish liability under § 1, a plaintiff must prove (1) the existence of an agreement, and (2) that the agreement was an unreasonable restraint of trade." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016).  In the Prior Order, the Court dismissed the SAC for several independent reasons. Order at 4-16. Though many of the deficiencies appear uncured in the TAC, the failure to plausibly state an agreement among Defendants—the first step in any section 1 claim—is fatal to the federal antitrust cause of action.[1]

In the absence of direct evidence of an agreement, "plaintiffs may meet their burden by alleging parallel conduct among competitors and certain 'plus factors' suggesting a conspiracy." *Frost v. LG Elecs., Inc.*, 801 F. App'x 496, 497 (9th Cir. 2020). Parallel conduct exists when "competitors adopt[] similar policies around the same time in response to similar market conditions." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015). Given the likelihood that competitors will make similar choices under similar market conditions, plaintiffs must allege so-called "plus factors," which are "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *Id.* at 1194.

---

[1] In particular, Plaintiff still has not alleged a plausible predatory pricing scheme that would allow Defendants to recoup any losses by charging supracompetitive prices. The new allegations do little to plausibly show that consumers would continue to buy precious metal bullions as an investment at supracompetitive prices from Defendants—prices that would reduce the value of that investment—rather than invest in substitute products, or the same products from different websites. *See* Order 12-16.

Here, Plaintiffs allege that "Defendants' agreement can be inferred through their parallel conduct and certain plus factors." TAC ¶ 82. Plaintiff alleges parallel conduct by showing each Defendant has exhibited a pattern of market activity in which they have a short period of significant sales growth, followed by a sharp return to normal sales. TAC ¶¶ 83-91. Plaintiff also alleges there are a "a number of factors that indicate that Defendants' parallel conduct . . . was neither coincidental nor the result of independent action." TAC ¶ 92. First, Plaintiff alleges that each Defendant entered into "written commitments" with eBay to participate in the Daily Deals program. TAC ¶¶ 93-98, Ex. 22 (Daily Deals Agreement). Second, Plaintiff alleges there is "anomalous pricing" because "only one Defendant sells . . . at a discount for a time period." TAC ¶¶ 99-110. Third, Plaintiff contends each Defendant acted "against self-interest" by forfeiting price controls to eBay during participation in the Daily Deals program. TAC ¶¶ 104-110. Fourth, Plaintiff alleges each Defendant had "[k]nowledge of one another and the coordinated plan." TAC ¶¶ 111-121. This knowledge is shown by a number of facts, including that each Defendant is a "Featured Seller" on eBay, each Defendant usually appears among the first search results for bullion on eBay's website, and the agreement made with eBay indicates other "selected sellers" would be in the program.[2] *Id.*

Two of these purported "plus factors" are nearly identical to those rejected in the Prior Order, and they fail here for essentially the same reasons. As the Court already noted, the "anomalous pricing" and "forfeiture of price controls" follow from Defendants' participation in eBay's Daily Deals program. Order 6-9. According to eBay's Daily Deals Agreement:

> Seller[s] may be contacted by eBay and invited to list one or more items . . . on the eBay Site . . . at discounted prices for a specified period of time. . . . For certain Deals and subject to the terms and conditions of this Agreement, eBay may agree to pay a Subsidy Payment . . . to Seller to apply towards the discounted price of the Specified Item.

---

[2] Plaintiff also alleges that Defendants "communicated and corresponded" with one another either "directly or through the intermediary." TAC ¶ 118. Such vague and conclusory allegations need not be accepted as true. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), 275 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory . . . .").

TAC, Ex. 22 ¶ 1. "In other words, sellers agree individually to provide consumers a discount for a limited time *and* eBay pays the seller an additional subsidy so that consumers can receive an even lower price." Order 2-3. To participate, the seller must permit eBay to alter the deal price "to adjust for market conditions." TAC, Ex. 22 ¶ 5.2.iii.

As previously explained, the short-term price changes and sales increases are not evidence of coordination *among Defendants* but a predictable outcome of each Defendant's individual Daily Deals agreement *with eBay*. Plaintiff states there must be coordination because "the other Defendants do not lower prices to meet the 'competitive' price; they just wait their turn." TAC ¶ 108. But it is economically rational to wait rather than to undercut a low price that would result in a loss absent a rebate. Moreover, as the Court noted previously, "the temporary transfer of pricing to eBay is just a required term if Defendants (or any other seller) wish to participate in the Daily Deals Program" and does not suggest concerted action among Defendants. Order 8.

New with the TAC is Plaintiff's theory that Defendants' respective "commitments" with eBay and knowledge of each other's participation in the Daily Deals program constitute "plus factors." But neither of these allegations gives rise to a plausible conclusion that Defendants' actions were "inconsistent with unilateral conduct." *In re Musical Instruments*, 798 F.3d at 1194. Plaintiff vaguely argues that the agreements with eBay show "how material elements of the actual agreement alleged were secured and sequenced." Opp. 5. But Plaintiff does not reasonably explain how participating in the Daily Deals Program, a commonly offered program on eBay, proves an agreement among Defendants. Nor does Plaintiff show that one defendant's knowledge of another's participation in a program offered on a public platform is evidence of an agreement between those defendants. Knowledge of the publicly available commercial conduct of a competitor is part of any successful business.

At bottom, because all of Defendants' alleged conduct "could just as easily suggest rational, legal business behavior . . . as they could suggest an illegal conspiracy," Plaintiff's allegations "are insufficient to plead a § 1 violation." *In re Musical Instruments*, 798 F.3d at 1194 (citation omitted). Here, Plaintiff has alleged little more than that each Defendant participated in a popular sales promotion offered by eBay that produces low prices for consumers, a higher volume and lower cost (through a rebate) for the participating seller, and a competitive response that is consistent with the economic realities of the

promotion. Labeling this conduct a "conspiracy" falls short of the mark. *See id*. Thus, the motion to dismiss is **GRANTED** as to the federal antitrust claim against all Defendants.

The dismissal of this claim is **with prejudice**. The Court has already allowed Plaintiff an opportunity to cure the deficiencies in the antitrust conspiracy allegations. In response, Plaintiff recycled and reordered the same allegations and added a few meritless ones. Such a failure to cure identified pleading deficiencies is "a strong indication that the plaintiffs have no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). Given this pleading history and the "general implausibility of predatory pricing" schemes— which are "even more improbable when they require coordinated action among several firms," *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993)—this Court concludes that any further attempt to plead a predatory pricing conspiracy among fourteen businesses is likely futile and will only cause undue delay and additional cost. Under these circumstances, leave to amend is not warranted. *See Foman v. Davis*, 371 U.S. 178 (1962) (stating factors to be considered in exercising discretion); *see also Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (stating that "when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad'").

## II.  THE STATE-LAW CLAIMS

Plaintiff's TAC asserts claims for violations of two California statutes: sections 17043 and 17045 of the California Business and Professions Code. TAC ¶¶ 155-211. In the Prior Order, the Court dismissed these claims because they rested on a faulty theory of below-cost pricing by failing to consider the eBay rebates. Order 18-20.

The parties have not addressed these claims in much detail. Plaintiff has added new allegations but, in its briefing, generally treats these claims cursorily in analyzing whether it can state a claim under applicable federal standards. Opp. 22-25. Moreover, Plaintiff neglects to apply California law in any depth to the allegations asserted in this case, which may implicate the legality of the Daily Deals program to some extent. For their part, Defendants largely rely on the same analysis used to attack the federal antitrust claim without addressing the potential differences between federal and state law. MTD 22-24; Reply 18. This reliance may not be warranted. *See generally Brooke Grp. Ltd. v. Brown & Williamson*

*Tobacco Corp.*, 509 U.S. 209, 225 (1993) (noting that "federal antitrust laws . . . do not create a federal law of unfair competition"). The Court is reluctant to delve into the substantive viability of the state-law claims, particularly on a legal record that is not well developed.

Given the dismissal of the federal claim and lack of complete diversity among the parties, the Court instructed the parties in its tentative opinion to be prepared to address the possibility of remand of the remaining state claims at the hearing. There, the Court permitted all parties the opportunity to address the possibility of the Court's declining supplemental jurisdiction. No party contested that this jurisdictional question is left to the discretion of the Court, and no party requested further briefing on this issue.

"A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478-79 (9th Cir. 1998) (concluding that the district court need not elaborate on reasons for declining supplemental jurisdiction when only state-law claim(s) remain).  These factors tip in favor of allowing Plaintiff's state-law claims to proceed in state court. The comity interests are especially strong. The remaining state claims imply that eBay's popular Daily Deals Program may be unlawful under California law in many cases. Such a challenge to a substantial part of a large third-party's business model would have implications beyond this case and is more appropriately dealt with in California state court. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Thus, the Court declines supplemental jurisdiction over the remaining state-law claims and **DISMISSES** them **WITHOUT PREJUDICE** to refiling in state court.